Vernon PHILLIPS, Jack Linsemeier, Earl Beesley, Sr., James E. Smith, James L. Miller, James W. Elliott, Larry Schander, George Winter, Jr., Otto Koegele, Joseph D. Rule, Bennie M. Rule, John C. Arsenault, E.D. Green, Paul L. Koenig, Gordon M. Mahar, Jr., Jack M. Brittain, Tim Smith, Harman L. Shivers, Martin R. Jaros, Tim Burzinski, Edward T. Brown, Steven R. Dufford, Randall E. Dufford, Robert A. New, Warren Phillips, Robert Hill, Don Hill, Arthur D. Smith, James Elliott, Joe Conlon, Tony Shivers, Elias Fish, Eugene Lamb, Bryon J. King, Sidney Johnson, William P. Boek, Michael W. Boek, Appellants,

v.

MUKLUK FREIGHT LINES, INC., an Alaskan Corporation, and Crowley Maritime, a California corporation, Appellees.

No. S–726.

Supreme Court of Alaska.

July 3, 1986.

Rehearing Denied July 25, 1986.

George N. Hayes, Delaney, Wiles, Hayes, Reitman & Brubaker, Paul L. Davis, Boyko, Davis & Dennis, Anchorage, for appellants.

David H. Thorsness, Earl M. Sutherland, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, for appellees.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS and COMPTON, JJ.

COMPTON, Justice.

This case arises from a dispute between several independent truck owner-operators

(drivers) and Mukluk Freight Lines (Mukluk) regarding compensation owed the drivers under the terms of their lease agreements with Mukluk. The trial court granted summary judgment in favor of Mukluk, finding an accord and satisfaction. The drivers appeal this ruling and the trial court's denial of their motion for relief from judgment under Civil Rule 60(b). We reverse.

## I. FACTS AND PROCEEDINGS

Appellants Phillips, et al. are independent truck owner-operators who entered separate agreements to lease their equipment and services to Mukluk Freight Lines. Under the leases, the drivers were to be compensated based upon a percentage of Mukluk's gross revenue earned. Mukluk claims that after entering the agreements the drivers orally agreed that certain hauls would be compensated at rates other than those contained in the lease.

The drivers acknowledge that Mukluk paid them rates not in accordance with the written lease agreements, but dispute that they agreed to those rates. They allege that Mukluk violated applicable tariff requirements and breached the written lease agreements by: (1) intentionally or unintentionally causing rating or billing errors and thereby underpaying the drivers; (2) making special deals with customers which resulted in underpayment to the drivers; (3) giving preferential treatment to companies affiliated with Mukluk's parent company, Crowley Maritime Corporation, which again resulted in underpayment to the drivers; and (4) paying the drivers a lower rate than that contained in the written lease agreements.

The Alaska Transportation Commission (ATC) audited Mukluk's records in 1983. The ATC found that in some cases Mukluk had failed to comply with written tariffs on file with the ATC. Mukluk performed its own audits and computed what the drivers would have been paid under the written tariffs and lease agreements. Mukluk then sent individual letters to the drivers, along with checks for 50% of the additional compensation it had computed each of the drivers would be owed under the written tariffs.

Among other things, the letter stated that the check was "tendered to you on condition that if you choose to endorse and cash the same, such action shall constitute a complete release by you of all claims you now have against Mukluk, Crowley Maritime Corporation, [or any of their related companies.]" The letter also noted the enclosure of another copy of the same letter and stated: "Should you elect to endorse the enclosed check, we would appreciate your signature on the lower left-hand corner of this page, indicating your agreement."

The drivers consulted with their attorney, then endorsed and deposited the checks into an attorney trust fund. The funds were later placed in a court-supervised account. None of the drivers signed or returned the letter. After the checks had been negotiated, counsel for the drivers sent a letter to Mukluk stating that the drivers did not intend to release Mukluk and that they reserved their rights to sue Mukluk for monies due. .

The drivers sued Mukluk, alleging breach of contract. Mukluk moved for summary judgment on the basis that the drivers' endorsement and deposit of the checks constituted an accord and satisfaction. The trial court granted Mukluk's motion. The drivers appeal.

## II. DISCUSSION

An accord requires consideration to be effective. Consideration exists if the settlement is of a good faith dispute between the parties. *Air Van Lines v. Buster*, 673 P.2d 774, 777 (Alaska 1983); *State Department of Fisheries v. J–Z Sales Corp.*, 610 P.2d 390, 393 (Wash.App.1980); *Flowers v. Diamond Shamrock Corp.*, 693 F.2d 1146, 1151 (5th Cir.1982). The drivers may avoid summary judgment based on accord and satisfaction only if they can offer some evidence of bad faith on the part of Mukluk in resisting their claims, or if they can establish that no bona fide

dispute existed as a matter of law at the time they cashed the tendered checks. *Air Van Lines,* 673 P.2d at 778.

The drivers argue that a genuine fact dispute exists as to whether Mukluk's settlement offer was in bad faith. They contend that the affidavit of an expert transportation consultant contains direct evidence of Mukluk's bad faith in disputing the drivers' claims, and therefore the trial court erred in granting summary judgment based on accord and satisfaction.

Mukluk argues that evidence of bad faith in the antecedent transactions is irrelevant to the issue of whether summary judgment was proper in this case. It contends that the only relevant bad faith would be in its offer of an accord.

■ Mukluk misconstrues the law in this area, however. Bad faith in resisting a creditor's claim, e.g., arbitrarily refusing to pay a claim when there is no just basis for the refusal, is precisely the type of bad faith which prevents the operation of an accord. *Air Van Lines,* 673 P.2d at 778 n. 2; 6 A. Corbin, Corbin on Contracts § 1287 at 159 (1962). In *Air Van Lines,* the debtor (Keystone) resisted paying the full amount claimed by the creditor (AVL) because Keystone contended it did not authorize overtime by AVL employees. We held there was a bona fide dispute as to whether Keystone had implicitly authorized overtime, thus AVL's acceptance of a check tendered as full payment constituted an accord and satisfaction. *Air Van Lines,* 673 P.2d at 778. We stated that "evidence, either direct or circumstantial, of Keystone's *bad faith in resisting the overtime* would defeat its motion for summary judgment." *Id.* at 778 n. 2 (emphasis added). According to Corbin, a good faith dispute as to the *validity of the claim* is required. 6 A. Corbin, *supra,* § 1287 at 159. Thus, the question we must address is whether

the drivers produced evidence that Mukluk's refusal to pay the drivers the amount they claimed under the published tariffs and written lease agreements was in bad faith.

The basis for the drivers' underlying claim is their contention that Mukluk undercharged some customers, both intentionally and unintentionally. Since the drivers' compensation is computed as a percentage of the rate paid by the customer, Mukluk's alleged undercharging resulted in the underpayment to the drivers. The drivers also argue that Mukluk failed to pay them the rates contained in the written lease agreements.

Support for their contentions is found in the affidavit of Irvin P. Cook, Jr. (Cook), a transportation consultant hired by the drivers to perform a partial audit of their settlement files. Cook found evidence of rating and billing errors, special deals for certain customers, preferential treatment of Mukluk affiliated companies, and withholding of rating information from drivers.

Because of the "very high percentage of rate and billing errors" he found, Cook concluded that "at least some of those errors were intentional" and that Mukluk deliberately underpaid the drivers.

Cook stated that Mukluk's practice of making special deals with certain customers, then notifying a driver that he was to be compensated at a different rate than that agreed upon, "is an exercise of economic duress." He points out that state and federal regulations require that a lease for use of a vehicle must be in writing and must state the amount to be paid. *See* 49 C.F.R. §§ 1057.11(a) and 12(d) (1985); 3 AAC 64.010(a)(2) and (5) (Eff.1976).[1]

Cook also discussed Mukluk's practice of giving preferential treatment to affiliated companies. He explained how affiliated

---

**1.** Other statutes require carriers like Mukluk to adhere to published tariffs and prohibit the extension of privileges or facilities affecting the value of the transportation. *See* 49 U.S.C. § 10761(a) (1982); AS 42.10.310(a). The drivers argue that Mukluk's violation of these statutes precludes Mukluk from asserting the defense of

accord and satisfaction. *Cf. Sea-Land Service v. American International Movers,* 528 F.Supp. 224 (W.D.Wash.1981) (acceptance of tendered amount will not preclude later action for proper freight charge under tariff). Given our resolution of this case, we need not reach this issue.

and non-affiliated loads were mixed and the drivers were paid only the lower, affiliated rate. Cook said, "it appears that the compensation due the owner-operator for non-affiliated LTL was denied ... and furthermore it appeared that Mukluk blatantly concealed from the owner-operator what the owner-operator was entitled to." He discovered notations on various drivers' payment sheets and on company rate worksheets instructing Mukluk employees *"not to include the freight charge computation in the record of the owner-operator settlement."* (Emphasis in original). Without a copy of the freight bill a driver is unable to determine whether his portion of the freight charges was computed correctly.

Based upon these discoveries, Cook concluded:

> I do not believe that Mukluk can, in good faith, dispute that it owes the owner-operators more than they had paid them. I have read the letter sent to the owner-operators which accompanied checks sent to them. I do not believe, based upon the law which is well known to Mukluk as well as myself, that Mukluk can claim their obligation to pay in dispute in good faith. In terms of the amount to be paid, the exact amount is nearly ascertainable though mathematical application of the correct tariff rates which is what I am currently attempting to do.

■ We believe the drivers have presented sufficient evidence of Mukluk's bad faith to defeat Mukluk's motion for summary judgment. *See Air Van Lines*, 673 P.2d at 778 n. 2. The statements contained in the Cook affidavit raised a genuine factual dispute over whether Mukluk's refusal to pay the drivers according to published tariffs and written contracts was in good faith. If there is no good faith dispute as to the validity of the drivers' claim, there can be no accord and satisfaction. *Id. See also* 6 A. Corbin, *supra*, § 1287 at 159.

The judgment of the trial court is therefore REVERSED and the case is RE-MANDED for further proceedings consistent with this opinion.[2]

MOORE, J., not participating.

---

2. We need not reach the drivers' arguments that Mukluk's offer was ambiguous or that the trial court abused its discretion by denying their motion for relief under Civil Rule 60(b).