John J. SHAW, Appellant,

v.

STATE of Alaska, DEPARTMENT OF ADMINISTRATION, PUBLIC DEFENDER AGENCY, and David C. Backstrom, Appellees.

No. S–3720.

Supreme Court of Alaska.

Aug. 30, 1991.

Joseph L. Paskvan, Hoppner & Paskvan, P.C., Fairbanks, for appellant.

Randy M. Olsen, Asst. Atty. Gen., Fairbanks, and Douglas B. Baily, Atty. Gen., Juneau, for appellees.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

OPINION

RABINOWITZ, Chief Justice.

John Shaw brought suit against David Backstrom and the Public Defender Agency alleging legal malpractice. The superior court granted summary judgment, conclud-

ing that the action was barred by the statute of limitations. We reverse and hold that a convicted criminal defendant must obtain post-conviction relief as a precondition to maintaining a legal malpractice claim against his or her attorney.

### Facts and Proceedings

On March 8, 1973, John Shaw and Toney Powell, both represented by assistant public defender David Backstrom, were convicted of two counts of burglary not in a dwelling and two counts of larceny in a building. Powell had stolen seventeen pairs of pants from a men's store where he and Shaw worked as janitors, and Shaw had allegedly assisted him. Shaw has steadfastly maintained his innocence.

While representing both Shaw and Powell on the burglary and theft charges, Backstrom advised the superior court that a "conflict situation" was arising. However, separate attorneys for the defendants were never provided. The conflict continued through the trial. Powell was willing to testify that Shaw had nothing to do with the theft but defense counsel did not permit him to do so. Further, Backstrom did not advise Shaw that he could take the stand in his own defense, because he wanted to protect Powell. Additionally, several witnesses at trial were not allowed to testify as to statements by Shaw because of the threat to Powell.[1] As noted above, Powell and Shaw were convicted. Sentencing was set for April 10, 1973. Backstrom indicated to Shaw that he would file an appeal, but he did not. Nor did Backstrom contact Shaw, although he had indicated that he would.

Shaw never appeared for sentencing because "he was not going to jail for something he didn't do." He left the jurisdiction and from mid-March of 1973 until September of 1978, Shaw lived in St. Louis, Missouri. The superior court issued a bench warrant for his arrest. Shaw later returned to Alaska and on December 26,

1979, he was stopped in Fairbanks for operating a motor vehicle with a defective tail light. This stop resulted in a routine check, revealing the outstanding warrant for his arrest. Shaw was subsequently charged with failure to appear.

Thereafter, the superior court scheduled a sentencing hearing for Shaw's 1973 convictions. Shaw was originally represented by the Public Defender Agency ("PDA"), but, due to conflict, the superior court released the PDA as his counsel and appointed Daniel Saluri to represent Shaw. After a hearing, the court suspended imposition of a sentence for the 1973 convictions and placed Shaw on probation for two years.

Saluri also represented Shaw in his April 1980 jury trial for failure to appear. After his conviction for failure to appear, the superior court sentenced Shaw to a term of three years with two suspended. An appeal followed. While the appeal was pending, Shaw moved to Barrow, where he was employed by the North Slope Borough until his arrest in 1981 for receiving a stolen handgun and being a felon in possession of a handgun. Again represented by Saluri, Shaw pled *nolo contendere* to the possession charge, and the larceny charge was dropped.

After Shaw's arrest on the felon in possession charge, his probation officer petitioned to revoke Shaw's probation on the 1973 burglary and larceny convictions. Originally, Saluri represented Shaw on this matter, but later the law firm of Birch, Horton, Bittner, Pestinger and Anderson was appointed to represent Shaw. In early 1984, an attorney with that firm notified Shaw that he intended to argue that Shaw was denied effective assistance of counsel in connection with the 1973 burglary and theft convictions, based on Backstrom's original representation of Shaw.

Later, in 1986, the Office of Public Advocacy was appointed to represent Shaw in a sentence appeal for the felon in possession

---

1. On December 23, 1985, the Public Defender Agency raised the following argument in trying to get Shaw's original conviction vacated:

Because the State of Alaska provided one attorney for two defendants, the attorney did not want to use Powell to exculpate Shaw, because then Powell would be prejudiced. This is a classic case of conflict of interest between clients.

charge. In its representation of Shaw, the Office of Public Advocacy filed a motion to set aside the 1973 convictions. On August 15, 1986, the superior court set aside Shaw's 1973 convictions because they were constitutionally defective.

Shaw has served time in jail from December 26, 1979 until March 7, 1980 for the 1973 convictions; from the end of December 1981 until September 1982 on the failure to appear charge, and from October 1985 until September 1986 for the felon in possession charge.

Shaw filed a complaint on January 13, 1988, alleging that David Backstrom and the PDA negligently allowed a conflict of interest to lead to his 1973 convictions. Backstrom and the PDA pled the statute of limitations as an affirmative defense. All parties then filed motions for summary judgment as to the statute of limitations issue.

The superior court granted the state's motion for summary judgment. The court held that a plaintiff in a legal malpractice suit involving a criminal matter need not set aside his or her conviction before filing the civil claim. Rather, the plaintiff must only show that "but for the negligence of his attorney, he would have received a more favorable result." Finding that sometime between 1983 and 1984 Shaw learned that he might have had ineffective assistance of counsel in connection with the 1973 proceedings, and applying the two year statute of limitations of AS 09.10.070,

the court held that his suit was barred by the statute of limitations.[2]

*Discussion*

■ We hold that a convicted criminal defendant must obtain post-conviction relief before pursuing an action for legal malpractice against his or her attorney.[3] Given that obtaining such relief will remain uncertain until actually granted, the statute of limitations for filing legal malpractice claims must be tolled until such relief is granted.

Our review of the case law reveals that other jurisdictions are divided on the issue of requiring post-conviction relief for maintaining a legal malpractice action in a criminal case. However, we agree with those courts which have held that public policy requires some form of post-conviction relief as a prerequisite to the filing of a legal malpractice claim. As the New York Court of Appeals has explained,

> This is so because criminal prosecutions involve constitutional and procedural safeguards designed to maintain the integrity of the judicial system and to protect criminal defendants from overreaching governmental actions. These aspects of criminal proceedings make criminal malpractice cases unique, and policy considerations require different pleading and substantive rules.

*Carmel v. Lunney*, 70 N.Y.2d 169, 518 N.Y.S.2d 605, 607, 511 N.E.2d 1126, 1128 (1987) (citations omitted).

**2.** The superior court rejected Shaw's argument that a plaintiff has to be informed that a civil claim existed; rather, it held that he merely had to be put on notice to begin an inquiry to protect his civil rights. Nor did it find that the continuous representation rule made Shaw's claim timely. Even when tolling the statute of limitations during the time Shaw was represented by the PDA, the court found that the PDA was released as counsel in 1980. The court determined that the PDA's sporadic representation of Shaw from 1981 to 1986 on matters "unrelated" to the 1973 convictions was not enough to keep the continuous representation rule in play. The court also rejected equitable tolling as Shaw did not have duplicative remedies nor was his initial action to overturn his earlier conviction defective. It further rejected the argument that imprisonment tolled the stat-

ute of limitations because Shaw's cause of action did not accrue while he was in prison, as the statute required. Because we hold that obtaining post-conviction relief is an element of legal malpractice in criminal cases, we do not reach these other issues. Nor do we reach Shaw's allegation that the six year statute of limitations in AS 09.10.050 applies after our decision in *Jones v. Wadsworth*, 791 P.2d 1013 (Alaska 1990).

**3.** Post-conviction relief most typically involves relief under Criminal Rule 35 or Criminal Rule 35.1. However, nothing in this opinion is meant to imply that only Criminal Rule 35 or Criminal Rule 35.1 relief permits the bringing of a legal malpractice action; any post-conviction relief suffices.

■ The requirement of post-conviction relief promotes judicial economy because many issues litigated in the quest for post-conviction relief will be duplicated later in the legal malpractice action. This is because dispositive post-conviction relief is relevant to the issue of proximate causation. *Claudio v. Heller,* 119 Misc.2d 432, 463 N.Y.S.2d 155 (Sup.Ct.1983).[4] As Shaw argues, it is also relevant to the issue of damages. *See Johnson v. Schmidt,* 719 S.W.2d 825, 826 (Mo.App.1986). If the defendant was denied post-conviction relief, the legal principle of collateral estoppel would serve to eliminate any frivolous malpractice claim. *See Schlumm v. Terrence J. O'Hagan, P.C.,* 173 Mich.App. 345, 433 N.W.2d 839, 846–47 (1988) (collateral estoppel barred malpractice claim which rested upon the same issues previously decided in plaintiff's ineffective assistance of counsel case); *Weiner v. Mitchell, Silberberg & Knupp,* 114 Cal.App.3d 39, 170 Cal.Rptr. 533, 538 (1980) (valid federal conviction cannot be relitigated in malpractice action and must be accepted as the proximate cause of plaintiff's conviction); *Johnson v. Schmidt,* 719 S.W.2d at 826; *see* 2 R. Mallen & J. Smith, *Legal Malpractice* § 21.3, at 289 (3d ed. 1989); *see also* D. Potel, *Criminal Malpractice: Threshold Barriers to Recovery Against Negligent Criminal Counsel,* 1981 Duke L.J. 542, 551–56 (1981). Thus, by prioritizing post-conviction relief judicial resources will be conserved. Moreover, requiring post-conviction relief as a prerequisite to a legal malpractice action aids in determining whether the statute of limitations bars the action. By adopting the date that post-conviction relief is obtained as the trigger to the statute of limitations, we establish a bright line test which should significantly assist courts in the resolution of statute of limitations issues.

Systemic concerns also support such an approach. Mallen and Smith note "the litigious nature of incarcerated persons who occupy the time of their incarceration by pursuing civil actions against their former attorneys." 2 R. Mallen & J. Smith, *supra,* at 290. Also of concern is the attorney who, in the course of defending against a malpractice action, might produce privileged or other evidence in his or her defense that might hurt a criminal defendant with a legitimate basis for post-conviction relief. Finally, we note the desirability of allowing a criminal defendant with a valid post-conviction relief claim to pursue that remedy without the distraction of also filing a legal malpractice claim.

■ The superior court's decision and the state's arguments on appeal caution against this approach. The superior court declined to impose a higher requirement on the criminal defendant than on the civil defendant in a malpractice action.[5] However, "there is minimal unfairness in such a requirement since the ability to have a judgment set aside because of the incompetence of counsel is a remedy uniquely

---

**4.** The burden of proof in the two proceedings is similar. In obtaining post-conviction relief for ineffective assistance of counsel, defendant must show "that his lawyer's skill ... fell below that of a lawyer with ordinary skill and training in the criminal law, and ... that this defective performance contributed in some way to his conviction." *Larson v. State,* 614 P.2d 776, 780 (Alaska 1980). In a post-conviction relief proceeding the petitioner must prove by a preponderance of the evidence all facts necessary to overturn the prior judgment of conviction. *Merrill v. State,* 457 P.2d 231, 234 (Alaska 1969), *rev'd on other grounds, Donnelly v. State,* 516 P.2d 396 (Alaska 1973).

**5.** We previously have listed the elements of legal malpractice:

Like those of any other action for negligence, the elements of a cause of action in tort for professional negligence are: (1) the duty of the professional to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence.

*Linck v. Barokas & Martin,* 667 P.2d 171, 173 n. 4 (Alaska 1983) (citations omitted). These same elements apply in a criminal case, with the additional requirement that the plaintiff must first obtain post-conviction relief. At least one court has recognized that merely obtaining post-conviction relief will not automatically establish legal malpractice, even in a case of ineffective assistance of counsel, if the remaining elements are not established. *Mylar v. Wilkinson,* 435 So.2d 1237, 1239 (Ala.1983).

available to criminally convicted persons. The civil litigant has no such remedy." R. Mallen & J. Smith, *supra*, at 291.[6] Moreover, the two types of malpractice actions involve different policy considerations.

The state warns that this approach eliminates the concept of a statute of limitations: Criminal Rule 35(a) allows an application to correct an illegal sentence "at any time." However, the discovery rule, which applies to civil actions, may also trigger legal malpractice actions at an unknown time in the future. *See Wettanen v. Cowper*, 749 P.2d 362, 364 (Alaska 1988).[7] Finally, the state also asserts that the requirement which we adopt today will discourage attorneys from seeking post-conviction relief for their own clients. Shaw argues, in contrast, that the negligent attorney will want to mitigate damages by attempting to obtain post-conviction relief for the client. We find merit in Shaw's argument and note that, as here, the negligent trial attorney would not necessarily be the same attorney seeking post-conviction relief on the basis of ineffective assistance of counsel.

■ In determining that a successful motion for post-conviction relief is a prerequisite to maintaining an action for legal malpractice in a criminal case, we have relied in part on the law of malicious prosecution. In a malicious prosecution tort action, establishing the tort requires the plaintiff prove an unsuccessful prosecution occurred. *See Hazen v. Municipality of Anchorage*, 718 P.2d 456, 461 (Alaska 1986). This element is not established, and indeed, remains uncertain, until the cessation of the underlying action. The same is necessarily true of post-conviction relief. The merits of the application for post-conviction relief cannot be established until the court has ruled on the matter. Therefore, we conclude that the statute of limitations on legal malpractice actions arising out of criminal proceedings does not begin to run until after the post-conviction relief has been obtained.[8]

6. We thus note our disagreement with *Krahn v. Kinney*, 43 Ohio St.3d 103, 538 N.E.2d 1058, 1061 (1989), which held that all legal malpractice actions require the same elements of proof, whether arising from criminal or from civil representation. The *Krahn* court noted the inequity that would result from a contrary holding, yet, from the facts reported in the opinion, it is clear that the plaintiff in *Krahn* should have been able to obtain post-conviction relief. Moreover, most of the cases cited by *Krahn* support our holding or are inapposite to it. For example, in *McCord v. Baily*, 636 F.2d 606, 609–10 (D.C.Cir.1980), *cert. denied*, 451 U.S. 983, 101 S.Ct. 2314, 68 L.Ed.2d 839 (1981), the court held that a denial of post-conviction relief collaterally estopped a plaintiff from pursuing a legal malpractice action. The court stated that "the legal standards for ineffective assistance of counsel ... and for legal malpractice in this action are equivalent." *Id.* at 609. While *McCord* did not hold that post-conviction relief is an element of malpractice in a criminal case, we believe the court's reasoning and holding support such a result.

*See also Mylar v. Wilkinson*, 435 So.2d at 1239 (fact that convicted criminal defendant had obtained post-conviction relief not sufficient to maintain an action in legal malpractice absent showing that he would have obtained a more favorable result apart from attorney's negligence); *Snyder v. Baumecker*, 708 F.Supp. 1451, 1464 (D.N.J.1989) (applying New Jersey law) (the estate of a deceased prisoner, who had never been convicted, could recover damages for emotional distress based on a legal malpractice action against the decedent's attorney if estate proves that "but for" defendant's alleged legal malpractice, decedent would have obtained his release from prison); *Bowman v. Doherty*, 235 Kan. 870, 686 P.2d 112 (1984) (plaintiff may maintain an action in tort for loss of liberty based on legal malpractice; no requirement of post-conviction relief, but plaintiff's theory was not wrongful conviction). Each of these cases is inapposite to the instant case.

7. The state also contends that existing case law supports its position. *Wettanen v. Cowper*, 749 P.2d 362 (Alaska 1988), held that it is not necessary that the client suffer all of the damages caused by the attorney's malpractice before the statute begins to run, nor that the client know the full extent of damages. Rather, the statute begins to run on the date when one is actually harmed as a result of the malpractice. *Id.* at 365. The underlying legal action in *Wettanen*, however, involved a civil action for assault; it involved none of the policy considerations present with a criminal defendant.

8. We reject the view that the statute of limitations begins running without a dispositive motion for post-conviction relief. *See, e.g., Winkler v. Messinger, Alperin & Hufjay*, 147 A.D.2d 693, 538 N.Y.S.2d 299, 300 (1989); *Jepson v. Stubbs*, 555 S.W.2d 307, 314 (Mo.1977) (en banc) (statute of limitations began to run when defendant

REVERSED and REMANDED to the superior court for further proceedings consistent with this opinion.

was released from prison and cause of action in legal malpractice was capable of ascertainment). We recently reiterated our view that "the defense of statute of limitations ... is generally disfavored by courts." *Lee Houston &*

*Assoc. Ltd. v. Racine,* 806 P.2d 848, 854 (Alaska 1991) (citation omitted). A criminal defendant's interest in obtaining post-conviction relief is sufficient to counteract any policy concern over possible dilatory conduct.