**Earle BEESLEY, Eulas Fish, Elton Greene, Robert Hill, Robert New, Vernon Phillips, Arthur Smith and James Smith, Plaintiffs,**

v.

**William O. VAN DOREN, Defendant.**

No. S–5374.

Supreme Court of Alaska.

May 13, 1994.

Paul L. Davis, Law Offices of Paul L. Davis & Associates, Anchorage, for plaintiffs.

Mark Rindner and Terisia K. Chleborad, Lane, Powell, Spears, Lubersky, Anchorage, for defendant.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS and COMPTON, JJ.

*OPINION*

COMPTON, Justice.

Pursuant to Alaska Rule of Appellate Procedure 407, the United·States District Court for the District of Alaska certified the following question to this court: In a legal malpractice action, is the statute of limitations tolled until final resolution of the litigation underlying the malpractice claim?

## I. FACTUAL AND PROCEDURAL BACKGROUND

In April 1983 the eight plaintiffs (collectively, Beesley) and other truck drivers for Mukluk Freight Lines, Inc. (Mukluk) hired William Van Doren to represent them in a wage dispute. Mukluk sent Beesley checks accompanied by letters indicating that signing and cashing the checks "shall constitute a complete release by you of all claims you now have against Mukluk." Van Doren allegedly advised Beesley to endorse the checks for deposit into a court-supervised account. Van Doren later filed a complaint against Mukluk and its parent company, Crowley Maritime Corp. (Crowley), on behalf of the drivers.

The drivers dismissed Van Doren and retained other counsel in December 1983. In March 1984 Crowley and Mukluk filed a motion for summary judgment based on the affirmative defense of accord and satisfaction. The trial court granted the motion in August. The case was appealed to this court, which reversed the trial court's decision. *Phillips v. Mukluk Freight Lines,* 721 P.2d 1143 (Alaska 1986). We held that there was sufficient evidence of bad faith in Mukluk's settlement offer to defeat summary judgment. *Id.* at 1146.

The case was litigated for four more years in state and federal courts. While in federal court, defendants Crowley and Mukluk filed another motion for summary judgment based on accord and satisfaction, which was not granted. The case finally settled in September 1990.

Beesley filed the complaint in the present case in federal court in October 1991. Beesley alleges that Van Doren's advice to sign the checks amounted to gross negligence and a reckless disregard for the rights of his clients. Beesley asserts that Van Doren's advice (1) added time and expense to the litigation, (2) caused Beesley to settle for far less than if the defense of accord and satisfaction had not existed, and (3) caused Beesley to suffer "great anxiety and worry causing emotional distress, fear, unhappiness and depression."

Van Doren responds that the statute of limitations began to run in March 1984, when Beesley was forced to defend against Mukluk's motion for summary judgment, or at the latest by August 1984, when the trial court ruled against Beesley. United States District Court Judge H. Russel Holland agreed, concluding that under *Wettanen v. Cowper,* 749 P.2d 362 (Alaska 1988), the statute of limitations began to run upon the initial adverse judgment at the trial court level. On reconsideration, however, Judge Holland decided that *Wettanen* was distinguishable because Beesley had continued to pursue the merits of the underlying litigation. Simultaneous litigation of the underlying case and the malpractice case might have forced Beesley to take inconsistent positions. Judge Holland certified the question whether the statute of limitations in a legal malpractice case is tolled until the litigation underlying the malpractice claim has been resolved. This court granted the certificate.

## II. DISCUSSION

The issue before us is a question of law, to which we will apply our independent judgment. On questions of law, our "duty is to adopt the rule of law that is most persuasive in light of precedent, reason, and policy." *Guin v. Ha,* 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

In *Wettanen* we held that the statute of limitations for attorney malpractice begins to run when

the client discovers or reasonably should have discovered the existence of all the elements of his cause of action. Moreover, if the client discovers his attorney's negligence before he suffers damages, the statute of limitations will not begin to run until the client suffers actual damages.

*Wettanen,* 749 P.2d at 364 (citing *Greater Area, Inc. v. Bookman,* 657 P.2d 828, 829 & n. 3 (Alaska 1982)); *see also Thomas v. Cleary,* 768 P.2d 1090, 1094 (Alaska 1989) (holding that because plaintiffs "have incurred no damages, no [professional malpractice] has occurred.").

Van Doren argues that this court's decision in *Wettanen* is indistinguishable from the present case and is controlling. In *Wettanen* the attorney had stipulated to settle the underlying case without the client's knowledge

or authorization. *Wettanen,* 749 P.2d at 363. The court entered its judgment pursuant to the stipulation in March 1982. The client hired a new attorney who moved to set aside the judgment. The motion was denied. An appeal was dismissed because it was not then from a final judgment. Final judgment was entered in December 1985. *Id.* The client filed a malpractice action the same day. *Id.* at 364. Applying the two-year statute of limitations, we held that the client's claim was barred because he "knew of his cause of action against [his attorney] and suffered actual damages more than two years before this case was filed." *Id.* at 365. A client need not suffer all of the damages caused by his or her attorney's malpractice before the statute of limitations begins to run. *Id.* "[T]he guiding principle is that the statute of limitations commences to run when one is actually damaged as a result of the alleged malpractice, and that the commencement of the statute will not be put off until one learns the full extent of his damages." *Id.*

Beesley argues that this court should follow the lead of some jurisdictions and adopt an "exhaustion of appeals" rule because, in the words of the Arizona Supreme Court, "the injury or damaging effect on the unsuc-cessful party is not ascertainable until the appellate process is completed or is waived by a failure to appeal." *Amfac Distribution Corp. v. Miller,* 138 Ariz. 152, 673 P.2d 792, 794 (1983). Van Doren responds that an "overwhelming majority of courts" hold that the statute of limitations applicable to a claim for legal malpractice is *not* tolled pending resolution of the underlying litigation.[1]

■ We reject the "exhaustion of appeals" rule. *Wettanen* holds that a statute of limitations begins running when a party suffers actual damages, without regard to whether the full extent of the damages is known at the time.[2] *Wettanen,* 749 P.2d at 365.

In the alternative, Beesley argues that *Wettanen* is inapplicable because the case did not address the situation where the underlying litigation continued after the discovery of attorney malpractice. The client in *Wettanen* did not appeal from the final judgment. Therefore, this court did not have occasion to consider the situation in which a legal malpractice plaintiff might have to take inconsistent positions in separate proceedings. Beesley contends that this situation may compromise his chances of success in both matters.[3]

---

1. See *Rhoades v. Sims,* 286 Ark. 349, 692 S.W.2d 750, 752 (1985); *Laird v. Blacker,* 2 Cal.4th 606, 7 Cal.Rptr.2d 550, 555, 828 P.2d 691, 696 *cert. denied,* — U.S. —, — — —, 113 S.Ct. 658–59, 121 L.Ed.2d 584 (1992); *Jankowski v. Taylor, Bishop & Lee,* 246 Ga. 804, 273 S.E.2d 16, 18 (1980); *Belden v. Emmerman,* 203 Ill.App.3d 265, 148 Ill.Dec. 583, 586, 560 N.E.2d 1180, 1183 (1990); *Basinger v. Sullivan,* 540 N.E.2d 91, 94 (Ind.App.1989); *Dearborn Animal Clinic P.A. v. Wilson,* 248 Kan. 257, 806 P.2d 997, 1006 (1991); *Braud v. New England Ins. Co.,* 576 So.2d 466, 469–70 (La.1991); *Hayden v. Green,* 431 Mich. 878, 429 N.W.2d 604 (1988); *Sabes & Richman, Inc. v. Muenzer,* 431 N.W.2d 916, 918–19 (Minn.App.1988); *Dixon v. Shafton,* 649 S.W.2d 435, 438 (Mo.1983); *Suzuki v. Holthaus,* 221 Neb. 72, 375 N.W.2d 126, 128 (1985); *Zimmie v. Calfee, Halter & Griswold,* 43 Ohio St.3d 54, 538 N.E.2d 398, 402 (1989); *Chambers v. Dillow,* 713 S.W.2d 896, 898 (Tenn.1986); *Richardson v. Denend,* 59 Wash.App. 92, 795 P.2d 1192, 1195 n. 7 (1990); *Hennekens v. Hoerl,* 160 Wis.2d 144, 465 N.W.2d 812, 818–19 (1991).

2. The possible benefits of tolling a statute of limitations until the exhaustion of appeals do not justify a departure from the common law rule in negligence and legal malpractice cases. The pe-riod begins running at the earliest point there is knowledge of injury. *Hunt v. Bittman,* 482 F.Supp. 1017, 1021–22 & n. 22 (D.D.C.1980), *aff'd,* 652 F.2d 196 (D.C.Cir.), *cert. denied,* 454 U.S. 860, 102 S.Ct. 315, 70 L.Ed.2d 158 (1981), *cited in Wettanen,* 749 P.2d at 365. The California Supreme Court has recently held that "the statute of limitations for legal malpractice actions commences on entry of adverse judgment or final order of dismissal." *Laird,* 828 P.2d at 696. First, the court noted that the client sustains injury as soon as he or she is forced to incur costs pursuing an appeal. *Id.* Second, a successful appeal "does not necessarily exonerate the attorney, nor does it extinguish the client's action against him for negligence in the conduct of trial." *Id.* A recent Alaska case supports this latter point. In *Doe v. Hughes, Thorsness, Gantz, Powell & Brundin,* 838 P.2d 804 (Alaska 1992), this court noted that although the clients' adoption decree was upheld on appeal, the challenge to it was a "costly affair." *Id.* at 806.

3. See *Peat, Marwick, Mitchel & Co. v. Lane,* 565 So.2d 1323, 1326 (Fla.1990); *United States Nat'l Bank & Higgens v. Davies,* 274 Or. 663, 548 P.2d 966, 970 (1976); *Hughes v. Mahaney,* 821 S.W.2d 154, 157 (Tex.1991).

In *Wettanen* we did not consider the problem of forcing the client to assert inconsistent positions in the underlying and malpractice cases. We do not do so in this case. We are not persuaded that Beesley's positions in the underlying and malpractice cases are inconsistent. The question whether the defense of accord and satisfaction existed is different from the question whether Van Doren's actions created the possibility of such defense. Even if Beesley ultimately overcame the defense, Beesley still has a cause of action against Van Doren, whose actions damaged him by extending the length and expense of the litigation. Furthermore, courts often deal with seemingly inconsistent positions. An argument that the defense of accord and satisfaction did not exist, and if it did, that the attorney was responsible for its creation, is certainly tenable in the legal arena.

■ Both of Beesley's arguments would require us to overrule *Wettanen*. Under the rule of *stare decisis*, this court will overrule precedent only "where the court is 'clearly convinced that the rule was originally erroneous or is no longer sound because of changed conditions, and that more good than harm would result from a departure from precedent.'" *State v. Souter*, 606 P.2d 399, 400 (Alaska 1980) (quoting 1B J. Moore, *Moore's Federal Practice* ¶ 0.402 at 154–55 (1974)) (other citations omitted), *overruled on other grounds by State v. Dunlop*, 721 P.2d 604 (Alaska 1986); *see also Dunlop*, 721 P.2d at 620. In this case, we choose not to disturb the rule in *Wettanen*, because we are not persuaded that either changed conditions or a balancing of the parties' interests favors overruling *Wettanen*. Accordingly, we adhere to *Wettanen* and decline to adopt the "exhaustion of appeals" rule.[4] The statute of limitations begins running when a client discovers or reasonably should have discovered all the elements of the cause of action, and suffers actual damages. Proper application of this rule will provide the client with adequate opportunity to commence his cause of action within the statute of limitations. Therefore, we find it unnecessary to adopt a rule which tolls the statute of limitations until all of a client's appeals are exhausted.

## III. CONCLUSION

■ We hold that the statute of limitations in attorney malpractice cases is not tolled pending the final resolution of the litigation underlying the malpractice action. Under *Wettanen*, the statute of limitations began to run on Beesley's malpractice claim when Beesley suffered actual damages. It is not necessary that all damages Beesley suffered be ascertainable before the statute begins to run.

RABINOWITZ, J., dissents.

BURKE, J., not participating.

RABINOWITZ, Justice, dissenting.

I dissent from the majority's holding that the applicable statute of limitations "is not tolled until all appeals have been exhausted."

The majority concedes that "[i]f a party was forced to take truly inconsistent positions *and* 'more good than harm would result from [the] departure,' then we might be inclined to re-examine *Wettanen*." (Alteration in original) (citation omitted).[1] Here Beesley

---

4. If a party was forced to take truly inconsistent positions *and* "more good than harm would result from [the] departure," *Souter*, 606 P.2d at 400 (citation omitted), then we might be inclined to tailor *Wettanen* to this difficult situation.

 Likewise, because Beesley retained a different attorney before the motion for summary judgment against him was filed, we are not asked to consider the adoption of the "continuous representation" rule. Under that rule, the statute of limitations is tolled as long as the client is represented by the same attorney who committed the alleged malpractice. We have opined that we might adopt the rule. *Wettanen*, 749 P.2d at 365. Such a rule would resolve the concern for the attorney-client relationship raised by some courts

which have rejected the "exhaustion of appeals" rule. *See Amfac*, 673 P.2d at 798–99; *Neylan v. Moser*, 400 N.W.2d 538, 542 (Iowa 1987).

1. Note, the precise question certified to this court by the federal court:

 In a legal malpractice action in which the plaintiff claims that the attorney's negligent representation of the plaintiff in a prior case resulted in the creation of a new defense for the defendant in the prior case, and that plaintiff could not initiate an action against the attorney prior to final resolution of the prior case because to do so would require plaintiff to asset [sic] a position that would be directly and

was forced to take "truly inconsistent positions" and thus I am led to the conclusion that in the particular circumstances of this case the statute of limitations was tolled until Beesley's appeal of the underlying action was finally resolved.

First, this court has taken the position that although the defense of the statute of limitations is a legitimate one, it is generally disfavored. *Lee Houston & Assocs., Ltd. v. Racine*, 806 P.2d 848, 854–55 (Alaska 1991); *Jenkins v. Daniels*, 751 P.2d 19, 22 (Alaska 1988). We have also observed that "[w]here two constructions as to the limitations period are possible, the courts prefer the one which gives the longer period in which to prosecute the action." *Safeco Ins. Co. of Am. v. Honeywell*, 639 P.2d 996, 1001 (Alaska 1981).

Second, our jurisprudence has de-emphasized the traditional policies advanced in support of statutes of limitations, namely, fairness to the defendant (notice), concern that witness memories will fade over time, avoidance of witness unavailability, and the avoidance of loss of evidence in general. Adoption of the discovery rule, for example, undermined most of these policies since some claimants do not discover their injuries until many years after the applicable period of limitations.[2]

Third, Van Doren had actual notice early on, as did his errors and omissions insurance carrier, of his alleged legal malpractice in representing Beesley against Mukluk and Crowley.[3] Depositions were taken and Van Doren had the opportunity to perpetuate testimony.

Fourth, although I agree that the applicable statute of limitations commences when a party discovers or reasonably should have discovered his or her cause of action and suffers actual damages, here the statute of limitations should be tolled for the reasons advanced by Beesley in his briefing to this court. I find particularly compelling Beesley's argument—not raised, briefed, or addressed in *Wettanen*—that the majority's rule would force him to assert inconsistent positions in the underlying litigation against Mukluk and Crowley and in the legal malpractice action against Van Doren. In this regard I disagree with the majority's statement that "[w]e are not persuaded that Beesley's positions in the underlying and malpractice cases are inconsistent."

While litigating the underlying action, Beesley disclaimed the existence of an accord and satisfaction. Had Beesley brought a legal malpractice action against Van Doren during this time, he would have taken the

---

materially adverse to plaintiff's claims against defendant in the prior case, when does plaintiff's right of action against the attorney accrue for purposes of commencing the applicable period of limitation?

2. Under *Racine*, 806 P.2d at 855, and *Pedersen v. Flannery*, 863 P.2d 856, 857 (Alaska 1993), the applicable statute of limitations is six years. Here Beesley filed his legal malpractice claim against Van Doren within one year after the expiration of the six-year limitations period, assuming that no tolling occurred.

3. Van Doren concedes as much. He acknowledges that in December 1983 Van Doren's replacement, Paul Davis, wrote Van Doren the following:

> I have recently reviewed the enclosed state Supreme Court case, *Atlas Van Lines, Inc. v. Jack Buster, et al*, Op. No. 276—December 9, 1983, and believe that an accord and satisfaction based upon the negotiations of the checks in combination with the letters that were written to your, now my, clients may raise a legitimate issue of accord and satisfaction that we are going to have to deal with.

He also admits that in March of 1984 Davis wrote Van Doren demanding an explanation of why he advised the truckers to cash the checks, stating "that your determination to cash the checks has greatly imperiled the drivers [sic] chance to seek the correct compensation that they are owed by Mukluk." In this same communication Davis *advised Van Doren to "notify [his] errors and omissions carrier of [the] situation immediately . . . ."* (Emphasis added).

Van Doren also concedes that

> [o]n October 8, 1984, Davis wrote to Van Doren's attorney, George Hayes, that "[i]t is our belief, based upon the statements that were made by Mr. Van Doren in his deposition, along with those statements made to his (now my) clients, Mr. Van Doren engaged in an act of *malpractice* when he advised the clients and caused their checks to be cashed." Davis requested financial and legal assistance in filing appeal bonds, meeting appeal costs and preparing the necessary briefs. Davis concluded *"But for Mr. Van Doren's negligence,* the Summary Judgment Motion would not have been granted, making an appeal unnecessary."

(Citations omitted) (alteration in original).

inconsistent position that Van Doren's alleged negligence gave rise to an accord and satisfaction.[4]

Fifth, I am not persuaded that *Wettanen* must be overruled to reach the holding that the statute of limitations is tolled when the claimant is appealing in the underlying action, and as a consequence is required to advance inconsistent positions in the underlying litigation and in the malpractice action. As noted previously the arguments raised in Beesley's instant appeal were not raised in the *Wettanen* appeal. Further, even if *Wettanen* must be overruled, under the governing principles of *stare decisis,* I conclude that there is no persuasive bar to modification of *Wettanen* for the purpose of fashioning a tolling exception.

We will overrule one of our prior decisions only when we are

> " 'clearly convinced that the rule was originally erroneous or is no longer sound because of changed conditions, and that more good than harm would result from a departure from precedent'...." A decision may prove to be originally erroneous if the rule announced proves to be unworkable in practice. Additionally, a prior decision may be abandoned because of "changed conditions" if "related principles of law have so far developed as to have left the old rule no more than a remnant of abandoned doctrine, [or] facts have so changed or come to be seen so differently, as to have robbed the old rule of significant application...."

*Pratt & Whitney Canada, Inc. v. Sheehan,* 852 P.2d 1173, 1176 (Alaska 1993) (citations omitted) (alterations in original).

The strength of *stare decisis'* command for respect for precedent varies depending upon the precedent involved. *Wettanen,* in my view, illustrates a type of decision in which the command is not particularly compelling. *Wettanen* was decided without the benefit of

a clear adversarial presentation of the "exhaustion of appeals" doctrine, or any adversarial presentation of the inconsistent positions rationale. Justice Souter has remarked that a precedent that "was not subject to 'full-dress argument' prior to its announcement ... is entitled to less deference than one addressed on full briefing and argument." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,* —— U.S. ——, 113 S.Ct. 2217, 2247, 124 L.Ed.2d 472 (1993) (Souter, J., concurring in part and concurring in the judgment). This principle recognizes that "[s]ound judicial decisionmaking requires 'both a vigorous prosecution and a vigorous defense' of the issues in dispute." *Id.*

Sixth, I note that *Shaw v. State, Department of Administration, Public Defender Agency,* 816 P.2d 1358 (Alaska 1991), which was decided after *Wettanen,* undercuts *Wettanen's* reliance on *Hunt v. Bittman,* 482 F.Supp. 1017 (D.D.C.1980), *aff'd,* 652 F.2d 196 (D.C.Cir.), *cert. denied,* 454 U.S. 860, 102 S.Ct. 315, 70 L.Ed.2d 158 (1981). Despite all the traditional rationales advanced in support of statutes of limitations, we held in *Shaw* that in a legal malpractice action arising out of a criminal proceeding the statute of limitations for filing legal malpractice claims must be tolled until the criminal defendant obtains post-conviction relief. 816 P.2d at 1360. In reaching this conclusion, we noted the uniqueness of criminal proceedings:

> By adopting the date that post-conviction relief is obtained as the trigger to the statute of limitations, we establish a bright line test which should significantly assist courts in the resolution of statute of limitations issues.
>
> ... *Also of concern is the attorney who, in the course of defending against a malpractice action, might produce privileged or other evidence in his or her defense that might hurt a criminal defendant with a*

---

**4.** The majority's opinion forces an attorney and client to take into account strategic considerations that would play no role under other rules. Suppose that a client sues for legal malpractice while the underlying suit is proceeding. Soon thereafter, the malpractice court enters summary judgment against the client, and the client appeals. The client's new attorney might decide

that making the best argument in the malpractice action might result in an admission or ruling that would undermine the viability of the underlying suit. If the underlying suit seems more important, the attorney might decline to make the argument, even when the actions proceed in different courts.

*legitimate basis for post-conviction relief. Finally, we note the desirability of allowing a criminal defendant with a valid post-conviction relief claim to pursue that remedy without the distraction of also filing a legal malpractice claim.*

*Id.* at 1361 (emphasis added).

Based on the foregoing, I would adopt the exhaustion of appeals tolling rule in the particular circumstances of this case.[5] In the words of Justice Mosk,

> To force malpractice plaintiffs to file their actions before they know the outcome of the case upon which their claim is based does not promote judicial economy. The status of the malpractice claim is uncertain until the appeal in the underlying case is resolved, because if it is ultimately decided in the client's favor the malpractice suit may well become moot for lack of damages.

*Laird v. Blacker,* 2 Cal.4th 606, 7 Cal.Rptr.2d 550, 828 P.2d 691, 704 (Mosk, J., dissenting), *cert. denied,* ——— U.S. ———, 113 S.Ct. 658, 121 L.Ed.2d 584 (1992).

---

5. *See, e.g., Bonanno v. Potthoff,* 527 F.Supp. 561, 565 (N.D.Ill.1981) (applying Illinois law); *Amfac Distrib. Co. v. Miller,* 138 Ariz. 152, 673 P.2d 792, 794 (1983); *Peat, Marwick, Mitchell & Co. v. Lane,* 565 So.2d 1323, 1326 (Fla.1990); *Neylan v. Moser,* 400 N.W.2d 538, 542 (Iowa 1987); *United States Nat'l Bank v. Davies,* 274 Or. 663, 548 P.2d 966, 970 (1976); *Hughes v. Mahaney & Higgins,* 821 S.W.2d 154, 156–57 (Tex.1991).