**Sheila TARANTO d/b/a Tundra Taxi, Appellant,**

v.

**NORTH SLOPE BOROUGH, Appellee.**

No. S–6176.

Supreme Court of Alaska.

Jan. 19, 1996.

Michael A. Stepovich, Fairbanks, for Appellant.

Joseph N. Levesque, Barrow, for Appellee.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and EASTAUGH, JJ.

## OPINION

RABINOWITZ, Justice.

## I. INTRODUCTION

Evelyn Donovan prepared and displayed a petition which stated that signatories had knowledge that Sheila Taranto had sold marijuana, cocaine and liquor. Taranto filed a defamation action in the superior court at Barrow against the North Slope Borough. The superior court granted the Borough's motion for summary judgment. We reverse.

## II. FACTS AND PROCEEDINGS

### A. Preliminary Facts

Appellant Sheila Taranto lives in Barrow where she owns a taxi cab business. Sometime during November 1991, Taranto became aware that a petition regarding her had been drafted and displayed at the Borough's Administrative and Finance Office Building. The petition read as follows:

> We, the undersigned, have knowledge of Sheila Taranti [sic], owner of Tundra Taxi, to sell liquor, marijuana and cocaine. This will authorize Public Safety to interview us to document her illegal sale of liquor, marijuana and cocaine or attest to the fact that I have been a witness to her illegal activities.

There were lined spaces below for interested persons to write their names, addresses, and phone numbers. The petition was prepared by Evelyn Donovan. At the time, Donovan worked as the Borough Clerk for the North Slope Borough.

Before proceeding to formulate and type the petition Donovan contacted James E. Christensen, the Director of Public Safety for the North Slope Borough, to inform him about the proposed petition. After Christensen "g[a]ve the okay" for the idea, Donovan typed the petition on her office computer and made at least one copy of it.[1] It was then placed in the front reception area of the Borough Administration and Finance Building, where it could be viewed by anyone entering or leaving the building. The petition remained at this location for approximately one month. After obtaining twenty-two signatures, Donovan delivered the petition to Christensen.

### B. Prior Proceedings

Taranto brought an action for defamation against North Slope Borough in the superior court at Barrow. Taranto offered two theories as to why the Borough should be held liable for the actions of Donovan. Either (1) the Borough was directly liable because Donovan was acting in her official capacity as Borough Clerk and therefore the petition represented official borough policy, or (2) Donovan was a borough employee and that the Borough was therefore vicariously liable under the principle of respondeat superior.

Following the taking of the depositions of all of the major actors including Donovan, Taranto, the receptionists, and the public safety officer, the Borough moved for summary judgment. The superior court granted the motion and entered a final order dismissing the action. Taranto appeals, asserting that she offered sufficient evidence to create a material issue of fact as to whether or not the Borough should be held liable.

## III. STANDARD OF REVIEW

We review a grant of summary judgment using our independent judgment.[2] The "court must determine whether any genuine issue of material fact exists and whether the moving party is entitled to judgment on the law applicable to the established facts. All reasonable inferences of fact from proffered materials must be drawn against the moving party and in favor of the nonmoving party." Wright v. State, 824 P.2d 718, 720 (Alaska 1992) (citations omitted). "In reviewing an order of summary judgment, this

---

1. There is also evidence that Donovan changed the wording in the later draft so as to indicate that Taranto's activities included the selling of cocaine, rather than prostitution.

2. Because appellate review is de novo, Taranto's assertion that the superior court improperly construed Alaska Civil Rule 56 in granting the Borough's motion for summary judgment is moot.

court must reverse the order if the pleadings and evidence presented reveal either the existence of any genuine issues of material fact or that the moving party is not entitled to summary judgment as a matter of law." *Foster v. Hanni,* 841 P.2d 164, 170 (Alaska 1992).

## IV. DISCUSSION

### A. The Evidence Before the Superior Court

As noted previously, Taranto advanced two theories as to why the Borough should be held liable for the actions of Donovan. The first is that Evelyn Donovan was an official of the North Slope Borough, and in that capacity prepared and facilitated the publication of the defamatory petition against Taranto. The second theory is that the Borough is liable for the actions of Donovan under the doctrine of *respondeat superior.* For reasons which will be explained, we conclude that under either theory of recovery, Taranto's opposition to the Borough's summary judgment motion identified evidence raising genuine issues of material fact which preclude the grant of summary judgment in the Borough's favor.

Drawing all reasonable inferences of fact from the proffered summary judgment materials against the Borough and in favor of Taranto, the relevant evidence is as follows.

At the times in question Evelyn Donovan held the position of Borough Clerk for the North Star Borough. She reported to Borough Mayor Jeslie Kaleak, Sr. together with the Borough Assembly. Donovan stated in her deposition that the whole community was concerned about Taranto's sales of drugs and alcohol, and that the three receptionists who worked in the Borough office building asked her to type the petition in question.[3]

Donovan spoke with Jim Christensen, the Borough's Director of Public Safety, about the petition on two occasions—before she typed it and after it had been signed by a number of people. In her first conversation, she called Christensen and asked if he would like to have a petition with signatures.[4] Concerning her first conversation with Christensen, Donovan testified as follows:

Q Did he [Jim Christensen] give you the okay for it [the petition], as far as you understood?

A Yes, I believe he did, yes, if I remember correctly.

Q I mean, if he would have told you forget it, don't do it, would you have gone forward with it?

A No.

After securing Christensen's approval of the petition, Donovan placed the petition at the front receptionist area located in the Borough Administrative and Finance Office Building. According to Donovan, everyone saw the petition "when they left the building[.] [I]t was right there." In her deposition, Rose Ann Leavitt testified that the petition remained on the front counter for a period of one month.

In the course of her deposition, Donovan was asked if she had spoken to the Borough Mayor concerning the petition. She responded, "Yes, I told him that there was a petition [on Sheila] down in the front desk." Donovan further testified that the Mayor "didn't say anything."

After a month had expired, Donovan removed the petition, now containing twenty-two signatures, from the front receptionists' desk. She then took the petition to Christensen at the Public Safety Office. Christensen told Donovan "that they were going to go

---

3. The three receptionists, Rose Ann Leavitt, Frances Leavitt, and Sunnie Dunbar, denied in their depositions that they had requested Donovan to prepare and circulate a petition accusing Taranto of serious criminal activities.

Donovan admitted that the petition originated in her office and that she typed it. She testified, "I typed it for the girls because they asked me, because they were complaining about Sheila, and so I agreed to type it for them."

4. Prior to her initial conversation with Jim Christensen, Donovan was contacted by a Borough Public Safety investigator who asked her if she would "buy something from Sheila [Taranto], because Public Safety was trying to bust her." Donovan declined to participate in any controlled buy from Taranto.

ahead and investigate [and] talk to those individuals that signed the petition." She then left the petition with him. When asked at her deposition what the purpose of the petition was, Donovan responded that "they were trying to run her [Taranto] out of town, because of her selling drugs, alcohol and prostitution" and that they were trying to institute a criminal prosecution against her as well as attempting "pull her taxi license."

Given the record before it on summary judgment, the superior court concluded that "[e]ven though it is troubling to consider such a document being available at the reception desk of the Borough's administrative offices concerning a citizen of the community, the Court finds that the Borough is not liable in tort for the private actions of some of its employees."[5]

### B.   *The Borough's Direct Liability for the Actions of Donovan.*

■ In regard to Taranto's direct and *respondeat superior* theories of liability against the Borough, we initially note that this court has stated that "the liability of a municipality for the negligent acts and omissions of its representatives will be governed by traditional tort principles." *Busby v. Municipality of Anchorage*, 741 P.2d 230, 232 (Alaska 1987). Further, though defamation suits against the state are prohibited by the Tort Claims Act,[6] defamation suits against incorporated units of local government are not prohibited.[7]

■ We now turn to Taranto's direct theory of liability. The superior court rejected this theory for the following reasons. First, it concluded that there was no evidence in the record that any senior official requested that this action be taken. "At most, the Borough Mayor was aware that the document was available at the front desk." Second, the area of the receptionist's desk constituted a "public forum." Third, no senior Borough official was involved in any way with the petition.

We disagree. Taranto has raised genuine issues of material fact going to the issue of the Borough's direct liability. Based upon the evidence outlined above, we believe a fact-finder could reasonably infer that the formulation and publication of the petition represented official Borough policy. The record could reasonably be viewed as indicating that the Borough, through the actions of the Borough Clerk and its Director of Public Safety, requested and approved the petition. In this regard, it is relevant that Donovan asked the Director of Public Safety if he would like to have a petition with signatures. The Director of Public Safety then gave his approval for the undertaking. Further, Donovan states that she would not have implemented the idea of a petition if the Director had disapproved.

Donovan's actions were motivated at least in part to further the Department of Public Safety's goal of criminally prosecuting Taranto for her alleged illegal activities and to obtain administrative revocation of her taxi license. The record further shows that the

**5.** The superior court found Donovan spoke with Jim Christensen prior to her preparation of the petition to "make sure that Public Safety would accept this type of list from the community. When the document had been signed, she also delivered it to Director Christensen." The superior court further found that the petition was "placed inside a folder—at the desk in such a way that anyone leaving the Borough building could see it."

**6.**   *See* AS 09.50.250(3).

**7.**   *See* AS 09.65.070(a), which reads:

Except as provided in this section, an action may be maintained against a municipality in its corporate character and within the scope of its authority.

According to AS 01.10.060, " 'Municipality' means a ... home rule or general law Borough." AS 09.65.070(d)(2) provides as follows:

An action for damages may not be brought against a municipality or any of its agents, officers, or employees if the claim

. . . .

(2) is based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty by a municipality or its agents, officers, or employees whether or not the discretion involved is abused.

In the case at bar, the Borough has not argued that any of the decisions or actions taken in relation to the petition came within the protective ambit of AS 09.65.070(d)(2). We therefore express no opinion on the merits of any such potential defense.

Borough Mayor knew of the contents and location of the petition, but took no steps to have the petition removed or to explicitly disavow its contents.[8] Borough officials allowed the petition to remain at the receptionist's desk in the Borough Administrative and Financial Office Building for a period of one month, at a location where anyone leaving the building could view it.[9] We therefore hold that it was error on the superior court's part to grant summary judgment against Taranto on her direct liability claim.[10]

### C. The Borough's Vicarious Liability for the Actions of Donovan Under the Doctrine of Respondeat Superior.

There are numerous cases which state that a municipality is vicariously liable for the actions of its employees, agents, and officers under the traditional tort principle of *respondeat superior*.[11] This court adopted the Restatement (Second) of Agency [hereinafter Restatement] rule that an employer will be held liable for both negligent and intentional torts of its employee, if the employee "is acting in the scope of his employment."[12]

In *Luth v. Rogers and Babler Construction Co.*, 507 P.2d 761 (Alaska 1973), we concluded that the trier of fact should be guided by the factors discussed in the Restatement in determining whether employees' actions are "within the scope of their employment." *Id.* at 764–65 n. 14. We have approved of Restatement § 228's provision that

(1) Conduct of a servant is within the scope of employment if, but only if:

(a) it is the kind he is employed to perform;

(b) it occurs substantially within the authorized time and space limits;

(c) it is actuated, at least in part, by a purpose to serve the master; and

(d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.[13]

Restatement § 229 further illuminates this concept.[14]

(1) To be within the scope of the employment, conduct must be of the same general nature as that authorized, or incidental to the conduct authorized.

---

8. The United States Supreme Court has held that a municipal corporation may be held liable for the official acts of its officers in 42 U.S.C. § 1983 claims. *Brandon v. Holt*, 469 U.S. 464, 471–72, 105 S.Ct. 873, 877–78, 83 L.Ed.2d 878 (1985). At least one state court has characterized this liability as "direct." *Zeigler v. Kirschner*, 162 Ariz. 77, 82 n. 2, 781 P.2d 54, 59 n. 2 (App.1989).

9. Donovan's repeated statements to the effect that when she typed the petition she was acting as a private citizen and not in the capacity of Borough Clerk are not determinative. Issues of credibility aside, in light of the facts detailed above, we hold that Taranto has raised a genuine issue of material fact as to the question of what capacity Donovan was acting in when she composed, typed, obtained approval for, circulated, and presented the petition to Jim Christensen, the Borough's Director of Public Safety.

10. In reaching this holding, we reject the superior court's reasoning that no high-ranking "senior official" of the Borough requested the creation of the petition and that the Borough Administration was not involved in the preparation of the petition. The summary judgment record simply contradicts both of these grounds. Further, the superior court's public forum rationale has no applicability given the portions of the factual record we have heretofore mentioned.

11. In the context of non-constitutional tort claims, state courts will only allow liability to be transferred from the agent (the official) to the principal (the municipal government) when the "scope of employment" requirements of *respondeat superior* have been met. *See, e.g., Mary M. v. City of Los Angeles*, 54 Cal.3d 202, 285 Cal.Rptr. 99, 814 P.2d 1341 (1991); *Lane v. Yamamoto*, 2 Haw.App. 176, 628 P.2d 634 (1981); *Silva v. State*, 106 N.M. 472, 745 P.2d 380 (1987); *see also* 63 C.J.S. § 757 *Municipal Corporations* ("[T]he rule of respondeat superior should not be applied to a municipal corporation to any greater extent than to a private corporation or individual. A municipality is not liable unless the tort of its officers or employees was committed under circumstances rendering the doctrine of respondeat superior applicable....") (footnotes omitted).

12. *Williams v. Alyeska Pipeline Service Co.*, 650 P.2d 343, 349 (Alaska 1982) (citing Restatement (Second) of Agency § 245 (1958)).

13. Restatement (Second) of Agency § 228 (1958) *quoted in Doe v. Samaritan Counseling Center*, 791 P.2d 344, 347 (Alaska 1990).

14. In *Luth*, we stated that both §§ 228 and 229 "provide the basis for proper instructions" to a jury on this issue. *Luth*, 507 P.2d at 764–65 n. 14.

(2) In determining whether or not the conduct, although not authorized, is nevertheless so similar to or incidental to the conduct authorized as to be within the scope of employment, the following matters of fact are to be considered:

(a) whether or not the act is one commonly done by such servants;

(b) the time, place, and purpose of the act;

(c) the previous relations between the master and the servant;

(d) the extent to which the business of the master is apportioned between different servants;

(e) whether or not the act is outside the enterprise of the master or, if within the enterprise, has not been entrusted to any servant;

(f) whether or not the master has reason to expect that such an act will be done;

(g) the similarity in quality of the act done to the act authorized;

(h) whether or not the instrumentality by which the harm is done has been furnished by the master to the servant;

(i) the extent of departure from the normal method of accomplishing an authorized result; and

(j) whether the act is seriously criminal.

In *Doe v. Samaritan Counseling Center*, 791 P.2d 344 (Alaska 1990), we rejected the Restatement view that each of the § 228 factors must be satisfied before an employer can be held liable. *Id.* at 347 (citing *Luth*). Instead, "the Second Restatement's factors are relevant considerations but are not determinative of the *respondeat superior* analysis." *Id.*

Finally, we have repeatedly stated that the determination of whether an employee is acting within the scope of employment is a fact-specific issue requiring case-by-case determination. For example, in *Fruit v. Schreiner*, 502 P.2d 133 (Alaska 1972), we affirmed the trial court's decision to deny the employer's motion for a judgment notwithstanding the verdict. In so doing we observed that "no categorical statement can delimit the meaning of 'scope of employment' once and for all

times. Applicability of *respondeat superior* will depend primarily on the findings of fact in each case." *Id.* at 141.

Similarly, in *Luth* this court overturned the superior court's decision to grant plaintiff's motion for a directed verdict on the theory of *respondeat superior*. Once again we alluded to the factual nature of the "scope of employment" inquiry and stated that even where the facts are undisputed, when "conflicting inferences can be drawn from undisputed facts" the question is properly left to the jury. *Luth*, 507 P.2d at 764–65 (citing Restatement (Second) of Agency § 228 cmt. d (1958)).

Taranto makes several arguments with respect to the application of the principles discussed above to the present facts. Taranto argues: (1) that the superior court's conclusion that Donovan was acting "to assist the [Borough] Department of Public Safety" could lead to the inference that such "assistance" would also be part of the "official duties" of the Borough Clerk; (2) that the petition was drafted during work time and on equipment owned by the Borough; and (3) that Donovan's stated purpose of seeking Taranto's conviction demonstrates that she was actuated by a desire to serve her employer in its crime fighting capacity. From these facts, Taranto argues, it is possible to infer that she was acting within the scope of her employment and therefore, under *Luth* and *Doe*, summary judgment would be improper.

Resolving all of the factual disputes in favor of Taranto, we conclude that the superior court erred in granting summary judgment to the Borough on Taranto's *respondeat superior* theory of liability. There is no question that Taranto met the second prong of the Restatement § 228(1)(b) test in that the formulation, typing, approval, and circulation of the petition occurred substantially within authorized time and space limits.

Further, from the evidence previously mentioned it is inferable that Donovan's activities in composing the petition and circulating it were actuated, at least in part, by a purpose to serve the Borough's Department of Public Safety in carrying out its crime

detection, prevention, and prosecutorial functions. Lastly, the evidence permits a finding that the Borough's Department of Public Safety encouraged the creation and circulation of the petition by Donovan, and that the Borough Mayor, with full knowledge of the contents of the petition and its location, failed to initiate any steps to halt the Borough Clerk's activities in regard to the petition. It is logical to infer from this evidence that Donovan's activities in connection with the drafting, circulation, and the presentation of the petition come within her duties as Borough Clerk. Thus, we conclude that as to the claim of liability based on *respondeat superior,* Taranto has also raised genuine issues of material fact which go to both the first and third prongs of the Restatement § 228(a) and (c), and under the criteria set forth in § 229(2).[15]

## V. CONCLUSION

The superior court's grant of summary judgment to the Borough is REVERSED.[16]

---

**15.** Given this record, it ultimately may be determined that the Borough ratified the actions of the Borough Clerk, even if assuming her actions were otherwise unauthorized. *See Sea Lion Corp v. Air Logistics of Alaska, Inc.,* 787 P.2d 109 (Alaska 1990); *Alaska Continental Bank v. Anchorage Commercial Land Associates,* 781 P.2d 562 (Alaska 1989).

**16.** Inherent in our disposition is the further conclusion that the Borough's reliance on a qualified privilege protecting private citizens' communications with the police as a basis for upholding the superior court's grant of summary judgment against Taranto on her *respondeat superior* claim lacks merit. Nothing in the relevant facts of this record justifies application of the qualified privilege.