Sheila TARANTO, d/b/a Tundra Taxi, Appellant,

v.

NORTH SLOPE BOROUGH, Appellee.

No. S–8172.

Supreme Court of Alaska.

Dec. 17, 1999.

Michael A. Stepovich, Stepovich Law Office, Fairbanks, for Appellant.

Scott J. Nordstrand, Owens & Turner, P.C., Anchorage, for Appellee.

Before MATTHEWS, Chief Justice, COMPTON, EASTAUGH, FABE, and BRYNER, Justices.

## OPINION

EASTAUGH, Justice.

### I. INTRODUCTION

A North Slope Borough employee wrote and publicly displayed a petition accusing a Barrow taxicab operator of illegal sales of alcohol and drugs. The operator sued the borough for defamation. The borough successfully moved for complete summary judgment, but we reversed on appeal. Following remand, the borough again successfully moved for complete summary judgment. We

affirm, holding that the borough's allegedly "piecemeal" summary judgment motions did not require that its last motion be denied, and that actual malice is the appropriate standard for determining whether government speech on matters of public interest is actionable.

## II. *FACTS AND PROCEEDINGS*

Sheila Taranto owned a taxicab business in Barrow.[1] Around November 1991 Evelyn Donovan, Clerk of the North Slope Borough, drafted a petition concerning Taranto. The petition read:

> We, the undersigned, have knowledge of Sheila Taranti [sic], owner of Tundra Taxi, to sell liquor, marijuana and cocaine. This will authorize Public Safety to interview us to document her illegal sale of liquor, marijuana, and cocaine or attest to the fact that I have been witness to her illegal activities.

The petition contained space for persons to write their names, addresses, and telephone numbers.

Before drafting the petition, Donovan contacted James E. Christensen, the borough's Director of Public Safety, to tell him what she planned to do. After Christensen " 'g[a]ve the okay' for the idea," Donovan typed the petition on her office computer and made at least one copy of it. She then placed the petition in the front reception area at the borough's Administration and Finance Building, where it remained for about one month. After twenty-two people signed the petition, Donovan delivered it to Christensen.

In January 1992 Taranto sued the borough for defamation. The borough moved for summary judgment in December 1992. The superior court granted the motion, concluding that the borough was not directly liable for the petition and that the borough could not be held liable under the doctrine of respondeat superior. Taranto appealed, and we reversed, holding that genuine issues of material fact precluded summary judgment under both theories of liability.[2]

Upon remand the borough retained new counsel and requested a continuance to March or April 1997. It also requested that the court extend the deadline for dispositive motions to January 6, 1997. Taranto filed a written non-opposition to the continuance motion and did not file an opposition to the extension motion. The superior court granted both of the borough's requests.

In October 1996 the borough moved for summary judgment on the issue of punitive damages. Taranto filed a written non-opposition to that motion, and the superior court granted summary judgment dismissing Taranto's punitive damages claim.

In January 1997 the borough moved to establish as law of the case a requirement that Taranto prove "actual malice" to prevail on her defamation claim. The borough concurrently moved for summary judgment, arguing that Taranto could not establish actual malice. The superior court granted both motions and dismissed Taranto's defamation claim. Taranto appeals.

## III. *DISCUSSION*

### A. *Standard of Review*

Taranto first argues that allowing the borough to file the January 1997 motion for summary judgment was error because it violated a policy against piecemeal litigation. We review this procedural issue for abuse of discretion.[3]

Taranto next asserts that one need not prove actual malice in a defamation suit against a government defendant, and that the superior court consequently erred in granting summary judgment to the borough. We review a grant of summary judgment using our independent judgment.[4] We must decide whether any genuine issue of material fact exists and whether the moving party was entitled to judgment as a matter of law.[5]

---

1. For the facts underlying this appeal, see our earlier opinion, *Taranto v. North Slope Borough*, 909 P.2d 354 (Alaska 1996) (*Taranto I* ).

2. *See id.* at 360.

3. *See S & B Mining Co. v. Northern Commercial Co.*, 813 P.2d 264, 269 (Alaska 1991).

4. *See Taranto I*, 909 P.2d at 355.

5. *See id.*

To the extent this court deals with legal issues of first impression, we will adopt the rule of law that is most persuasive in light of precedent, reason, and policy.[6]

B. *Did the Superior Court Abuse Its Discretion in Allowing the Borough to File a Third Motion for Summary Judgment?*

 Taranto argues that allowing the borough's third motion for summary judgment to raise the "actual malice defense" encourages piecemeal litigation.[7] She claims that the borough's answer raised "actual malice" as a defense nearly four years before, and that the borough's two earlier summary judgment motions could have argued the defense. The borough counters that the timing of motion practice is within the trial court's discretion.

Taranto did not oppose the borough's request for an extension in which to file dispositive pre-trial motions, and the borough filed its last summary judgment motion within the thus-extended time period. We consequently conclude that Taranto waived any procedural objection to filing this summary judgment motion. The superior court did not abuse its discretion in reaching the same conclusion.

 Moreover, the law is contrary to Taranto's argument. Alaska Civil Rule 56 addresses the timing of motions for summary judgment. It provides that parties defending against claims "may, *at any time*, move for a summary judgment."[8] Rule 56 does not limit the number of times a party may move for summary judgment.

This court has never limited the number of times a party may move for summary judgment. As the borough notes, the cases Taranto cites to establish a doctrine of avoiding piecemeal litigation concern the avoidance of multiple appeals or the relitigation of issues, not successive summary judgment motions.[9]

Because Rule 56 and Alaska case law do not preclude successive motions for summary judgment, and because Taranto waived her right to object, we hold that the superior court did not abuse its discretion in allowing the borough to file its final summary judgment motion.

C. *Must Taranto Prove Actual Malice in Her Defamation Claim Against the Borough?*

The superior court granted summary judgment to the borough on Taranto's defamation claim, reasoning that actual malice is the standard for determining whether the borough abused, and lost, its conditional right to speak. The court found no genuine issues of material fact under that standard.

 Taranto argues on appeal that the First Amendment does not protect defamatory governmental speech, and that it was therefore error for the superior court to apply an actual malice requirement and to grant summary judgment to the borough. The borough argues that the First Amendment protects governmental speech, subject to an actual malice standard, and that moreover, it had a conditional privilege to speak on matters of public interest.

Some courts have held that the First Amendment does not protect government

---

6. *See Guin v. Ha,* 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

7. Strictly speaking, actual malice is not a "defense." It has been said that a public figure suing for defamation "has the burden of alleging and proving that the defendant had knowledge or acted in reckless disregard." Restatement (Second) of Torts § 580A cmt. e (1977).

8. Alaska R. Civ. P. 56(b) (emphasis added); *cf.* Alaska R. Civ. P. 56(a) (concerning summary judgment motions by claimants).

9. *See S & B Mining,* 813 P.2d at 269 (holding that court did not violate policy against piecemeal litigation where court granted Civil Rule 54(b) judgment for several parties in multiple party action because remaining parties could not relitigate issues previously decided on summary judgment); *Young v. State,* 491 P.2d 122, 126–27 (Alaska 1971) (holding that trial court should rule on negligence before ruling on contributory negligence, to avoid prompting unnecessary appeals); *McCoy v. Alaska Brick Co.,* 389 P.2d 1009, 1011 (Alaska 1964) (holding that trial judge should have ruled on motion for new trial so it could be reviewed with other decision on appeal); *Snipes v. March,* 378 P.2d 827, 829 (Alaska 1963) (holding that trial court should have ruled on motion for new trial along with motion for directed verdict).

speech.[10] Indeed, Justice Stewart observed that "[t]he First Amendment protects the press *from* governmental interference; it confers no analogous protection *on* the Government." [11]

We need not decide here whether the United States or Alaska constitutions protect government speech, because this court has held that the common law confers a conditional privilege on speech addressing matters of public health and safety.[12] We do not need to consider whether a constitutional privilege applies if we conclude that a common law privilege applies. Undoubtedly the speech attributed to the borough here dealt with matters of public health and safety. Does a common law privilege apply?

Our decisions point to two different analytical models potentially applicable here.

We considered an equivalent claim in *Urethane Specialties, Inc. v. City of Valdez.*[13] There, the City of Valdez published partly false warnings about the safety of urethane foam installation, prompting an installer to sue.[14] We recognized that "the common law provides for privileges in various situations in which public policy requires that a speaker be accorded immunity for the making of defamatory statements.... 'Each such privilege is conditional upon the existence of a state of facts which make it in the public interest to protect the person speaking or writing....' " [15]

This court then adopted, for situations "like the one under consideration," [16] the privilege described in the Restatement (Second) of Torts § 598A: "An occasion makes a publication conditionally privileged if an inferior administrative officer of a state or any of its subdivisions makes a defamatory communication required or permitted in the performance of his official duties." [17] But this privilege can be lost. We held that Restatement (Second) of Torts § 600 determines whether the conditional privilege accorded certain government speech is lost through abuse.[18] The standard set out in § 600 is the equivalent of the actual malice standard.

Applying the *Urethane Specialties* analysis to this case would require us to affirm the borough's summary judgment. There are no genuine factual disputes about whether the petition concerned matters of public interest, whether the borough acted without actual malice, and whether the persons whose conduct is attributed to the borough acted with authority or permission.

Although applying that approach would require affirmance here, in many cases it may raise questions about the speaker's authority and permission.[19]

Our decisions discuss an alternative approach that applies broadly to speech on matters of public concern. We think that

---

**10.** *See Warner Cable Communications, Inc. v. City of Niceville,* 911 F.2d 634, 638 (11th Cir.1990); *NAACP v. Hunt,* 891 F.2d 1555, 1565 (11th Cir. 1990); *Student Gov't Ass'n v. Board of Trustees of Univ. of Mass.,* 868 F.2d 473, 481 & n. 10 (1st Cir.1989); *Estiverne v. Louisiana State Bar Ass'n,* 863 F.2d 371, 379 (5th Cir.1989).

**11.** *See Columbia Broad. Sys., Inc. v. Democratic Nat'l Comm.,* 412 U.S. 94, 139, 93 S.Ct. 2080, 36 L.Ed.2d 772 (1973) (Stewart, J., concurring).

**12.** *Urethane Specialties, Inc. v. City of Valdez,* 620 P.2d 683 (Alaska 1980); *Pearson v. Fairbanks Publ'g Co.,* 413 P.2d 711 (Alaska 1966); *Fairbanks Publ'g Co. v. Francisco,* 390 P.2d 784, 793 (Alaska 1964).

**13.** 620 P.2d 683 (Alaska 1980).

**14.** *See id.* at 684–87.

**15.** *Id.* at 689 (quoting *Francisco,* 390 P.2d at 793).

**16.** *Id.* at 689.

**17.** *Id.; see also* Restatement (Second) of Torts § 598A (1977).

**18.** *See Urethane Specialties,* 620 P.2d at 689–90. The Restatement (Second) of Torts § 600 provides: "[O]ne who upon an occasion giving rise to a conditional privilege publishes false and defamatory matter concerning another abuses the privilege if he (a) knows the matter to be false, or (b) acts in reckless disregard as to its truth or falsity." *See also* Restatement § 598A, cmt. 1 (specifying other ways privilege can be lost).

**19.** *See* Restatement (Second) of Torts § 598A (requiring that the communication be "required or permitted in the performance" of the government officer's official duties).

this alternative analysis encompasses cases of allegedly defamatory governmental speech. It also avoids the issue, inherent in Restatement § 598A, of the speaker's authority or permission. This alternative is discussed in two cases cited by the borough. The borough invokes *Fairbanks Publishing Co. v. Francisco*[20] to support its argument that government speech is protected, and *Pearson v. Fairbanks Publishing Co.*[21] to support its argument that a plaintiff must prove actual malice in all defamation suits involving speech on matters of public concern.

In *Francisco*, a discharged firefighter sued a Fairbanks newspaper for printing a letter by the city manager that outlined the alleged details surrounding his firing.[22] Although the defendant was a newspaper, this court went out of its way to recognize that "judicial officers, attorneys, witnesses, jurors, legislators, government executive officers and others are accorded the absolute privilege of publishing false and defamatory matter within certain limitations ... whenever it is necessary for the protection of one's own interest, the interest of third persons, or the interests of the public."[23] This dictum acknowledged that the common law privilege could extend to government speakers, while leaving unresolved what those "certain limitations" on the privilege might be.

In *Pearson*, we emphasized that for matters of public interest, the "actual malice" standard from *New York Times v. Sullivan* should apply.[24] There, a syndicated newspaper columnist charged that a Fairbanks newspaper editorial libeled him.[25] The court declined to consider the constitutional dimensions of the case, and instead held that if a plaintiff could show "actual malice," then "the privilege that otherwise would be enjoyed in discussion and debate on public questions and issues" would be lost.[26] While the court adopted the United States Supreme Court's definition of "actual malice," it carefully avoided grounding its opinion in any constitutional rights to free speech, focusing instead on the common law conditional privilege.[27]

 We read *Francisco* and *Pearson* to stand for the core proposition that speech on matters of public safety is privileged, but that this privilege is conditional and can be lost if the plaintiff proves that the speaker uttered untruths with actual malice.[28] Thus, these cases cloak speakers addressing matters of public health and safety with the actual malice conditional privilege. This protection will necessarily extend to a speaker's employer who is alleged to be vicariously liable for its employee's defamatory speech.

## IV. *CONCLUSION*

There is no genuine dispute that the communications concerned matters of public health or safety. Nor is there any basis for finding that Donovan or any borough official acted out of actual malice. Absent genuine, material fact disputes about these issues, the borough was entitled to judgment as a matter of law. The superior court did not err in granting summary judgment to the borough.[29] We therefore AFFIRM the judgment below.

---

**20.** 390 P.2d 784 (Alaska 1964).

**21.** 413 P.2d 711 (Alaska 1966).

**22.** *See Francisco*, 390 P.2d at 787.

**23.** *Id.* at 793.

**24.** *See Pearson* 413 P.2d at 714–15.

**25.** *See id.* at 712.

**26.** *Id.* at 715.

**27.** *See id.* at 714–15.

**28.** *See Mt. Juneau Enter. v. Juneau Empire*, 891 P.2d 829, 837–38 (Alaska 1995) (applying actual malice standard to article on matter of public interest).

**29.** Because we affirm the borough's summary judgment, it is not necessary to consider the borough's argument that the protection the government enjoys is absolute, and not merely conditional.